*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. A. THOROGOOD-MELTON, Minor.

UNPUBLISHED
August 10, 2023

No. 364248
Kent Circuit Court
Family Division
LC No. 21-052051-NA

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court's order terminating his parental rights to his minor child, ATM, pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to removal) and (3)(g) (failure to provide proper care and custody). On appeal, father argues that the trial court erred by finding that statutory grounds existed to terminate his parental rights, that the Department of Health and Human Services (DHHS) failed to provide reasonable efforts to reunite him with his child, and that he was not given adequate time to participate in services. Furthermore, father asserts that he was inappropriately judged for the shortcomings of respondent-mother,[1] and that the DHHS should have considered him or a relative for initial placement. We affirm.

## I. FACTUAL BACKGROUND

Before ATM was born, the DHHS was pursuing termination of mother's parental rights to her two older children based upon allegations that those children were left unsupervised for several hours at a hotel.[2] During the pendency of that case, mother and father formed a relationship and ultimately conceived ATM. Immediately after ATM's birth, the DHHS sought removal of ATM, who was born with cocaine in her system. Mother denied any drug use, but she tested positive for controlled substances, and father admitted that he, too, had a history of substance abuse.

At the preliminary hearing on December 22, 2021, neither of ATM's parents contested the allegations in the petition. A Children's Protective Services caseworker testified that the housing

---

[1] Mother voluntarily relinquished her parental rights to ATM, so mother is not a party on appeal.

[2] The older children are not father's children, so they are not at issue in this appeal.

conditions were unsuitable for ATM to remain in the home. The DHHS had just removed the two older children, their mother had just tested positive for cocaine, and father was on bond on charges involving controlled substances. When father was asked about family placement options, he was unable to identify any family members who would have been suitable for placement of ATM. The trial court assumed jurisdiction over ATM, removed her from her home, and placed her in a foster home with her two older siblings. The trial court identified the barriers to reunification for father as substance abuse, emotional instability, lack of employment, domestic-relations issues, and lack of parenting skills.

In May 2022, father pleaded guilty to felony charges involving possession of a controlled substance. He was incarcerated until November 21, 2022, when he was released to a community-based facility, Alternative Directions. The termination hearing concerning his parental rights to ATM began a week later. At that time, ATM had been in foster care for eleven months and father had not yet made any progress on his barriers to reunification. Father was referred for a substance-abuse assessment, but he never attended. In fact, father was subject to drug screenings during his parenting time, and each time he tested positive for cocaine, methamphetamine, and marijuana. In addition, father did not attend a scheduled psychological evaluation, nor did he provide verification of employment. While incarcerated, father completed some parenting packets, but never attended parenting classes. Father only attended 44 percent of his parenting-time visits and his manner with ATM was described as aggressive. Further, father was ordered to refrain from contacting mother because their relationship was not positive. Despite that order, mother and father communicated throughout father's term of incarceration.

By the time the termination hearing started, mother had stopped engaging in services and voluntarily released her parental rights to ATM. Father asked that the trial court continue ATM's foster-care placement until he could get sober and provide stability. But the trial court concluded that statutory grounds existed to support termination of father's parental rights and that termination was in ATM's best interests. Consequently, the trial court terminated father's parental rights, and then father appealed.

## II. LEGAL ANALYSIS

Father argues on appeal that reasonable efforts toward reunification were not made because he was not afforded ample time to engage in services. In addition, father insists that the trial court erred by terminating his parental rights based on insufficient statutory grounds. Father also asserts that the shortcomings of ATM's mother were inappropriately held against him and he should have been considered for initial placement. We shall address each of these arguments in turn.

## A. REASONABLE EFFORTS

Father claims that termination of his parental rights was premature because he was unable to participate in services while he was incarcerated. We review a trial court's decision concerning reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts

are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542. As a part of these reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2007). "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

In this case, father was incarcerated for approximately five months during the proceedings, and there was testimony suggesting that he did not participate in services while in jail other than completing homework parenting packets provided by his caseworker. The testimony was unclear whether appropriate services were available to father while he was in jail. Consequently, it is not clear whether father could not access services while he was in jail or whether he simply failed to seek out and participate in services. In any event, the testimony established that the caseworkers tried to provide father with services before he went to jail. Father had five months to participate in services before his arrest, but the trial court stated that his participation was minimal before he went to jail. Father did not complete a psychological evaluation or a substance-abuse assessment. Both of those services were scheduled twice, but father failed to attend any of those appointments. Those assessments would have provided further recommendations of necessary services for father. Moreover, father continued to use substances throughout the case. Every single drug test given to him by the agency was positive, and his arrest was the result of drug-related crimes. Furthermore, the caseworker testified that father attended fewer than half of his parenting-time visits.

Father's drug-related arrest was not the fault of the agency or the result of an alleged failure to offer him services. And even if services were unavailable to father while he was in jail, he failed to fully participate in available services for the five-month period before he went to jail. Therefore, the evidence does not suggest that father would have fully engaged in, and benefited from, services even if they were offered to him while he was in jail. Accordingly, the trial court did not commit clear error in concluding that the DHHS made reasonable efforts to reunify father with ATM before seeking termination of his parental rights.

## B. STATUTORY GROUNDS

Father next argues that the trial court erred by finding statutory grounds existed to terminate his parental rights. We review the trial court's decision regarding statutory grounds for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *Id.* Here, the trial court terminated father's parental rights under MCL 712A.19b(3)(c)(*i*) and (3)(g), which permit termination when:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Father contends that the trial court was not authorized to terminate his parental rights under MCL 712A.19b(3)(h) because his jail term was less than two years,[3] so the trial court sidestepped that restriction by terminating his rights under (3)(c)(*i*) and (3)(g) even though the court's primary concern was father's incarceration. This argument is not supported by the evidence in the record. The trial court's primary concern was not father's incarceration. In its ruling, the trial court noted that the primary barriers to reunification that justified its findings were father's substance abuse and his lack of parenting skills. Ultimately, the main concern was father's failure to participate in services before he went to jail, which made it unreasonable to wait for him to try to benefit from a treatment plan after his release given that the case had been open for a year. Thus, the trial court did not improperly circumvent the two-year imprisonment requirement in MCL 712A.19b(3)(h). Simply put, father's incarceration was not the basis for the termination of his parental rights.

Similarly, the record does not support father's contention that the trial court impermissibly considered his lack of housing and employment in its decision to terminate his parental rights. In fact, the court specifically found that father would obtain suitable housing and financial stability, observing that those matters had never been issues for him. Moreover, the caseworker testified at the termination hearing that father had adequate housing before he was arrested. She further stated that father's financial situation was not an issue. Father reported being employed, but he failed to supply verification of his employment even though the testimony throughout the case showed that father had employment. Also, the caseworker testified that a rehabilitation facility could provide father with employment services. Additionally, there was testimony that the home of father's aunt was appropriate. Initially, the caseworker suggested that mother and father look for independent

---

[3] Pursuant to MCL 712A.19b(3)(h), termination of parental rights is permissible when "[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

housing because it would be cramped with three adults and three children at his aunt's house, but the caseworker left no doubt that the home would be appropriate for father and ATM alone.

The main concern in this case involved substance abuse. ATM was removed immediately after her birth because mother's older children were already in foster care, mother tested positive for cocaine during her pregnancy, and ATM tested positive for cocaine when she was born. During the proceedings, father failed to complete a substance-abuse assessment, regularly tested positive for drugs such as cocaine and methamphetamine, and was arrested for drug-related offenses. Even before he went to jail, he failed to fully participate in, or complete, services. Father only attended 44 percent of the parenting-time visits offered to him, he did not complete parenting classes, and he failed to undergo a psychological evaluation. At the time of the termination hearing, father was in community confinement, so he could not provide proper care and custody for ATM.

When the termination hearing took place, ATM was 11 months old. She had been in foster care since her birth. The caseworker testified that father would have to participate in services and complete one year of sobriety before ATM could be returned to him. Therefore, ATM would have to remain in foster care for at least another year. Father faults the trial court for rushing to terminate his parental rights, but he offered little engagement with services even before he went to jail. Thus, considering father's failure to fully participate in, or benefit from, services, the trial court did not clearly err in finding that a basis for termination under MCL 712A.19b(3)(g) had been established by clear and convincing evidence. See *In re Frey*, 297 Mich App at 248. Because termination of father's parental rights was warranted under MCL 712A.19b(3)(g), we need not address any other statutory ground for termination. *In re Sanborn*, 337 Mich App 252, 273; 976 NW 44 (2021).

To the extent that father claims he was wrongfully judged for mother's failure to complete her service plan, his claim lacks merit. First, father elected to work with mother on the treatment plan. The caseworker testified that they were advised that if one parent did not do well, that could affect the other parent. Second, father declined to attend parenting time on his own. If mother did not attend, he did not attend. Third, the caseworker testified that mother and father remained in contact with each other while father was in jail and it appeared that they were still in a relationship. The caseworker believed that the drug use of mother and father was related to their relationship, and the caseworker thought they used drugs together. Father contends that the trial court wrongly considered his conduct before ATM's birth. But mother and father were in a relationship, and she became pregnant with his child, while the case involving her other two children was open. It was reasonable for the trial court to consider father's conduct, including his drug use with and around mother while she was pregnant and already involved in a child-protective proceeding. Finally, as we have already explained, father failed to complete any of his own services, such as a substance-abuse assessment or a psychological evaluation. Thus, the record does not support father's claim that he was improperly judged for mother's failings. His parental rights were terminated because of his own failure to participate in services offered to him.[4]

---

[4] Father does not challenge the trial court's finding that termination of his parental rights was in ATM's best interests. For the sake of completeness, however, we note that the trial court did not clearly err in finding that termination of father's parental right was in ATM's best interests. At

## C. PLACEMENT

Finally, father faults the trial court for failing to consider an initial placement of ATM with him. But father did not dispute ATM's removal in the trial court, so his claim is unpreserved. See *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017). Unpreserved claims are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). If plain error has occurred, reversal is warranted only if the plain, forfeited error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 9.

Father asserts that the trial court erred by removing ATM from his care without holding a hearing on the record, but a preliminary hearing took place on December 22, 2021, and addressed the removal. Father asked for placement of ATM with him, but an investigator was unable to view father's home despite making two attempts. Also, mother lived there and had no plan to move out. The trial court found that it would be contrary to ATM's welfare to remain in the home because it had not been assessed and there was no assurance that mother (who had had two children removed from her care and had been unsuccessful in getting them back) would not also be living there. The trial court told father he could file a motion requesting placement of ATM with him if his residence became appropriate, but father never filed such a motion.

If father opposed the trial court's removal of ATM, he was entitled to appeal the removal order to this Court, but he failed to do so. See MCR 3.965(B)(15); MCR 3.993(A)(1). Moreover, there is no indication in the record that father identified any appropriate relatives for placement. At the combined adjudication and disposition hearing, the caseworker testified that the agency had reviewed "quite a few relatives," but did not believe that there was a good fit because the agency wanted to keep the siblings together. On appeal, father asserts that ATM should have been placed with his aunt, but he presented no evidence that his aunt was appropriate for placement or that she was willing to accept placement. Indeed, at the preliminary hearing, the investigator testified that the aunt was not appropriate for placement because she had a history with Children's Protective Services. Father also does not explain how a different placement decision would have affected the ultimate outcome of the proceedings in light of his failure to participate in services. Accordingly, father has not shown that the trial court's placement decision constituted plain error affecting his substantial rights. See *In re Utrera*, 281 Mich App at 8.

Affirmed.

---

the time of the termination hearing, ATM was nearly one year old and needed permanency, stability, and finality. The trial court found that no bond existed between father and ATM because father only took part in 44 percent of the parenting time offered to him. The trial court found that father's parenting ability was poor because he consistently chose drugs over ATM and she had never been his priority. She resided in a pre-adoptive home with her half-siblings. The foster-care home was superior because it provided round-the-clock care for her, whereas father was unable to attend even half of his available parenting time before he went to jail. The trial court further noted that father was asking to continue the case for an additional 12 months, but concluded that father's issues concerning substance abuse and parenting skills remained. Therefore, the trial court did not clearly err by finding that termination of father's parental right was in ATM's best interests.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel